**IN THE COURT OF APPEALS OF IOWA**

No. 15-1708
Filed April 6, 2016

**IN THE INTEREST OF G.B.,**
**Minor Child,**

**L.R., Mother,**
Appellant,

**K.B., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their five-year-old son. **AFFIRMED ON BOTH APPEALS.**

Stephie N. Tran, Des Moines, for appellant mother.

Andrew J. Tullar of Tullar Law Firm, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Erin E. Mayfield of the Youth Law Center, Des Moines, for minor child.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

A mother and father who both suffer serious drug addictions separately appeal the termination of their parental rights to their now six-year-old son, G.B. The juvenile court granted the State's petition to terminate the mother's rights under Iowa Code section 232.116(1)(e), (f) and (*l*) (2015). The court granted the petition to terminate the father's rights under section 232.116(1)(e) and (f). Both parents contend the State fell short of proving the grounds for termination by clear and convincing evidence. The mother also alleges termination of her parental rights was not in G.B.'s best interests. We find clear and convincing evidence in the record to support the juvenile court's assessment that both parents have failed to address their long-standing substance abuse issues, which have contributed to their unstable living conditions, lack of employment, and inability to properly supervise G.B. Accordingly, we affirm the termination order.

## I.     Facts and Prior Proceedings

G.B. and his parents have been involved with the Iowa Department of Human Services (DHS) since September 2013. G.B. was removed from his parents' care at that time due to their methamphetamine use and the apprehension of a registered sex offender in their home. Our court has seen this family once before. *In re G.B.*, No 14-1516, 2014 WL 6682456, *1 (Iowa Ct. App. Nov. 26, 2014). In that appeal, we reversed and remanded for further proceedings because the evidence did not satisfy the statutory grounds for termination. *Id.* at *4.

Following our remand, the parents attended two therapy sessions with G.B. at Orchard Place. The therapist observed that the parents interacted

appropriately with the child and were "very receptive to feedback." The therapist noted the child displayed some regressive behaviors. In the previous four months, the child had switched foster homes twice, and the therapist noted the changes in his life had been "very difficult and confusing for him." A report from DHS dated January 16, 2015, discussed the therapeutic sessions, and noted the therapist planned to "continue to work with the parents and [G.B.] to ensure [G.B.'s] physical and emotional safety."

The juvenile court held a contested permanency review hearing on January 26, 2015. At the hearing, both parents admitting to using methamphetamine and marijuana between the time of the termination and our reversal. They also admitted a test taken on the day of the hearing would reveal recent drugs use. Neither parent had continued substance abuse treatment nor attended therapy during the appeal. The court also found both parents were dishonest with DHS about their treatment. As a result, the district court ordered: "Visitation shall be at DHS discretion with input from child's therapist. Child's therapist shall be informed of parents' ongoing drug use."

DHS then told the parents that visitation was "cut off because it would be detrimental to [G.B.'s] mental stability if he was to see [them] any more times." Neither parent has seen the child since January 2015.

The State filed the current termination petition on March 31, 2015. The juvenile court held the termination hearing on May 14 and July 9, 2015. In an order issued on September 29, 2015, the court granted the termination petitions on all grounds alleged. The mother and father now separately appeal.

## II.    Standard of Review

We review termination proceedings de novo.  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *Id.* Clear and convincing evidence must support the termination.  *In re M.W.*, ___ N.W.2d ___, 2016 WL 852001, *5 (Iowa 2016).  Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence.  *Id.*

## III.    Analysis of Parents' Claims

The parents both challenge all grounds for termination cited by the juvenile court.  When the juvenile court terminates parental rights on more than one ground, we may affirm the order on any ground we find supported by clear and convincing evidence in the record.  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).   In this case, we find clear and convincing evidence to support the termination of parental rights of both the father and mother under paragraph (f) of section 232.116.

But before discussing paragraph (f) we address the father's argument as it relates to the termination of his rights under paragraph (e).[1]  He contends he was

---

[1] The court may terminate under this subsection if it finds:
    (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96. (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months. (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, 'significant and meaningful contact' includes but

not able to maintain significant, meaningful contact with his son because DHS did not restart visitation following January 2015, ostensibly at the recommendation of the child's therapist. We find the father's position on this point to be compelling. We are troubled by the failure of DHS to provide the parents any significant interactions with their son after our reversal of the initial termination order.

As noted above, before the January 2015 permanency hearing, the parents attended two therapeutic visits with G.B. During the first visit, the therapist noted G.B. was "excited and happy to see his parents as evidenced by smiling, laughing, and exchanging many hugs and kisses." The therapist also expressed concerns over some of G.B.'s behaviors, such as punching stuffed animals and banging his head against his father's leg. The therapist described G.B. as "a little defiant." After the second visit, the therapist noted G.B. was acting out less, but was not talking as much, not using full sentences, and wanted to be carried by the mother. G.B. also professed to being "hurt" by hugs "when he clearly was not." According to the therapist, the parents acted appropriately with G.B. during both visits.

Following the January 2015 hearing, the juvenile court left visitation at DHS discretion with input from the child's therapist. It is not clear from our de

---

is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e).

novo review of the record that DHS refusal to restart visitation was genuinely related to the therapist's recommendation. In a letter to DHS dated April 15, 2015, almost four months after the permanency hearing, the child's therapist opined that G.B.'s regressive behaviors were "related to the instability in his life at the time which included moving foster homes twice and seeing his biological parents again after a goodbye session had been held." The therapist further stated: "After I became aware that the permanency goal was termination I determined it was not therapeutically appropriate, or in [G.B's] best interest, to include [the mother and father] in family therapy." It appears from this letter that even after the reversal and remand from our court, DHS had preordained that termination of parental rights would be the result of this child welfare case and did not actually base its denial of visitation on the therapist's recommendation.

The father argues: "The refusal to promote visitation with [G.B.], which could have taken place in a fully supervised setting rather than denying visitation altogether, was a failure by the State and DHS, and undermined any possibility of [the father's] success." We agree with the father that the DHS wrongly denied the parents an opportunity to restart supervised visitation following the remand. But we cannot conclude the lack of supervised visitation was the primary factor undermining the parents' ability to reunify with G.B. Rather, the parents' unabated substance abuse was the key motivation for the court to terminate their parental rights.

The juvenile court found the State offered clear and convincing evidence supporting termination of parental rights for both the mother and father under

section 232.116(1)(f).[2]   On appeal, the father challenges only the fourth element—that G.B. could not be returned to his care at the present time.   He asserts he "made major strides in addressing his substance abuse issues" aside from a relapse between the reversal of the first termination and the filing of the second termination.   We find his assertions are belied by the record.   The father has a fifteen-year history of using illegal substances.   The father admitted at the January 2015 permanency hearing that he would test positive for methamphetamine.   He also admitted at the termination hearing that he was using methamphetamine two or three times a week through April 2015.   He testified he uses methamphetamine to get high then uses marijuana to come down from the high.   Despite a substance abuse evaluation diagnosing him with a moderate to severe substance abuse disorder and recommending outpatient treatment, he never re-engaged in treatment after the first termination proceeding.   The juvenile court determined the father continued to have "unresolved substance abuse issues that prevent him from safely parenting this child."   We agree with that determination.

The mother also contests the State's proof of the fourth element under section 232.116(1)(f).   She argues she "was engaging in services as offered and

---

[2] The juvenile court may termination if it finds all of the following have occurred:

> (1) The child is four years of age or older. (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96. (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days. (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

provided in hope of having her child return home to her." The mother's hope of regaining custody of G.B. was not realistic under the circumstances. Like the father, the mother has a long history of illicit drug use. The mother did engage in outpatient treatment at the House of Mercy from late January to March 10, 2015. But she also admitted using methamphetamine a "handful" of times during that period. She left the House of Mercy because she was "discouraged." After that, by her own admission, she used methamphetamine and marijuana at least once a week from early March until late April 2015. Her last reported use was less than one week before the first day of the termination hearing. At the time of the termination hearing, the mother was not attending substance abuse treatment. Although the mother has been diagnosed under the DSM-V with a severe methamphetamine and marijuana use disorder, she has never completed substance abuse treatment and her last attempt with the House of Mercy lasted six hours. The mother continued to associate with people who use drugs, including the father. She was unemployed and had been since August 2014 though she testified she was looking for employment at the time of the termination hearing. The juvenile court concluded the mother's unresolved substance abuse issues prevent her from safely parenting G.B. We agree and affirm the termination of her parental rights under section 232.116(1)(f).

The mother also argues termination of her rights was not in G.B.'s best interests. In determining the best interests of the child, we give primary consideration to the child's safety, to the best placement for furthering the child's long-term nurturing and growth, and to the child's physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); *see also D.W.*, 791

N.W.2d at 708. As noted above, the mother has not had sustained success in addressing her addiction. G.B. has been removed from her care for more than two years. Even after the mother was given a second opportunity as a result of our court's reversal of the first termination order, she did not make appreciable progress toward addressing her substance abuse disorder.

As noted by his therapist, G.B.'s behavior signals his need for permanency. He should not have to wait indefinitely for his parents to achieve sobriety and stability in their own lives. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) (reiterating that courts will not deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child").

Lastly, the mother asserts the juvenile court should not have terminated her rights because she shares a strong bond with G.B. *See* Iowa Code § 232.116(3)(c). A court has discretion under this subsection to preserve the parent-child relationship if severing the bond would be detrimental to the child. *M.W.*, __ N.W.2d at __, 2016 WL 852001, at *11. We have no doubt the mother loves and desires to reunite with G.B. But her inability to address her own substance abuse disorder convinces us that termination would not be detrimental to the child. The child in doing well in a pre-adoptive home and has made significant behavioral strides. We do not see section 232.116(3)(c) as a reason to forego termination.

**AFFIRMED ON BOTH APPEALS.**